UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THERESA AMIE,

                                                  Plaintiff,

                                                                        DECISION AND ORDER

                                                                        10-CV-6599L

                                    v.

ERIK K. SHINSEKI,
Secretary, Department of Veteran Affairs,

                                                  Defendant.
_____

## INTRODUCTION

Plaintiff Theresa Amie ("Amie") brings this action against Eric K. Shinseki, Secretary of the Department of Veterans Affairs (the "V.A."), alleging that the V.A. discriminated against her with respect to her employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12201 et seq., and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §290. Specifically, plaintiff contends that the V.A. had subjected her to disparate treatment, a hostile work environment, and unlawful termination, all on the basis of her perceived disability.

In lieu of an answer, the V.A. now moves to dismiss the complaint pursuant to Fed. R. Civ. Proc. 12(b)(6), on the grounds that Amie's complaint fails to state a cause of action.  (Dkt. #3). Amie has cross moved to amend the complaint (Dkt. #7).  For the reasons set forth below, Amie's cross motion to amend is granted, the V.A.'s motion to dismiss is granted, and the amended complaint is dismissed.

## DISCUSSION

In deciding a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), the Court's review is limited to the complaint, and those documents attached to the complaint or incorporated therein by

reference.  *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996). The Court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant."  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *citing Ad-Hoc Comm. of the Baruch Black & Hispanic Alumni Ass'n v. Bernard M.  Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987).  Nonetheless, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, "bald assertions and conclusions of law will not suffice," *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 126 (2d Cir. 2007), and where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."  *Twombly*, 550 U.S. 544 at 570.

## I.      Amie's Cross Motion to Amend the Complaint

It is well settled that federal employees such as plaintiff have no recourse under the ADA for disability-related discrimination.  *See e.g.*, 42 U.S.C. §12111(5)(B)(i) (excluding the United States from the definition of ADA "covered" employers).  Rather, a federal employee's exclusive remedy for disability-based employment discrimination is prescribed by the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq. ("Rehabilitation Act").  *See Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998); *Chmiel v. Potter*, 2010 U.S. Dist. LEXIS 141748 at *13 (W.D.N.Y. 2010).

Amie's initial complaint erroneously listed her claims as arising under the ADA and NYHRL rather than the Rehabilitation Act, and her proposed amended complaint (Dkt. #7-1) simply seeks to correct that error.  In general, leave to amend is to be freely granted.  *See generally* Fed. R. Civ. Proc. 15(a).  In the interests of justice and in order to facilitate a more orderly and efficient analysis of the V.A.'s motion to dismiss, the grounds for which apply with nearly equal force to plaintiff's claims whether they are viewed as arising under the ADA or the Rehabilitation Act, plaintiff's cross motion to amend (Dkt. #7) is granted, and the Court will proceed to address the V.A.'s motion to dismiss, and plaintiff's arguments in opposition, as they pertain to the amended complaint.

II.     **Defendant's Motion to Dismiss Amie's Claims As Under the Rehabilitation Act**

The amended complaint (Dkt. #7-1) alleges, in summary, that the plaintiff is disabled by virtue of severe hearing loss of which the V.A. was "duly aware," and that as a result, the V.A. unlawfully "regarded" plaintiff as disabled "because of a perception of mental illness based on myth, fear and/or stereotype." *Id*. at ¶¶12, 14, 15.  The facts alleged in support of this conclusion primarily concern the V.A.'s communications with plaintiff, a probationary suicide hotline responder who also volunteered in the V.A.'s Pain Clinic, about whether interns or non-clinicians such as herself were entitled to observe groups within the Pain Clinic, and plaintiff's allegation that she was being "held back" from attempting a doctoral level internship, in that a supervisor warned her to stop making repeated inquiries on the subject because her behavior appeared "pushy."  *Id*. at ¶¶23-31.  Plaintiff also makes the somewhat contradictory assertions that she was unfairly denied a transfer to work an evening shift in order to accommodate her daytime coursework, *id*. at ¶¶32-36, but also that she was primarily scheduled to work "evenings and weekends" in the first instance.  *Id*. at ¶44.  Finally, plaintiff contends that on May 9, 2009, without prior notice, her probationary employment as a suicide hotline responder was terminated, and that the reason given by the V.A. -- that plaintiff's supervisors found she had been speaking to distressed veterans in a "disdainful, dismissive and insensitive way" -- is pretextual, because the supervisors were unlikely to have been able to observe plaintiff's interactions with veterans, and if they had, they would have realized that plaintiff's inappropriate behavior was caused by her hearing impairment.  *Id*. at ¶¶41, 42.

A.     **Discriminatory Discharge**

As the parties readily concede, the Rehabilitation Act incorporates the standards of the ADA, as well as the remedies and procedures associated with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), albeit with the significant distinction that although the ADA makes it unlawful to discriminate against a qualified individual "because of the disability of such individual," the Rehabilitation Act requires that in order to be actionable, the discrimination must

have taken place *solely* due to an individual's disability.  *Compare* 42 U.S.C. §12112(a) *with* 29 U.S.C. §794(a).  *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000).

In order to state a claim for disability-related discrimination, a plaintiff must plausibly allege that: (1) her employer is subject to the Rehabilitation Act; (2) she was disabled within the meaning of the Rehabilitation Act; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered adverse employment action solely on the basis of her disability.  *See D'Amico v. City of New York*, 132 F.3d 145, 150 (2d Cir. 1998).

Plaintiff's amended complaint fails to state a claim for discriminatory discharge for a number of reasons.  Initially, plaintiff makes no allegation that she was  otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation.

Second, plaintiff makes no factual allegations in support of her contention that her hearing impairment caused the V.A. to believe that she was substantially limited in performing any major life activity.[1]  To the extent plaintiff alleges that the V.A. was aware of her hearing impairment, it is well settled that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action."  *Cody v. County of Nassau*, 577 F. Supp. 2d 623, 643 (E.D.N.Y. 2008), *quoting Reeves v. Johnson Controls World Servs.*, 140 F.3d 144, 153 (2d Cir. 1998).  *See Keating v. Gaffney*, 182 F. Supp. 2d 278, 286 (E.D.N.Y. 2001) (in order to state a claim for "regarded as" disability discrimination, a plaintiff "must allege that his employer mistakenly regarded him as having . . . an impairment [which substantially limits one or more  major life activities]").

---

[1] I note that the plaintiff has persisted in omitting the elements of her claims discussed herein, in both her initial and amended complaint (the latter of which was drafted *after* the V.A. moved to dismiss her initial complaint and identified the deficiencies).  As such, the Court can only conclude that the omissions are deliberate, and that they likely reflect an actual absence of supporting facts, rather than facts mistakenly left out.  As such, the granting of further opportunities to amend would be futile.

Accepting all of the allegations in the complaint as true, it is clear that the V.A. stated to plaintiff that it found her "disdainful, dismissive and insensitive" interactions with distressed veterans to be inappropriate for a suicide telephone hotline responder.  However, none of the alleged facts plausibly suggest that the V.A. considered plaintiff to be unfit for work in general, or that it otherwise believed she was unable to perform one or more major life activities.  *See generally Mundo v. Sanus Health Plan of Greater New York*, 966 F. Supp. 171, 173 (E.D.N.Y. 1997) ("[t]he purpose of the 'perceived impairment' provision . . . is to 'combat the effects of archaic attitudes, erroneous perceptions and myths that work to the disadvantage of persons with or regarded as having disabilities . . . [i]t was not intended to categorize people with common personality traits as disabled"), *quoting Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995).

Rather, at most, plaintiff has alleged that the V.A. misinterpreted the cause of her inappropriate conduct toward veterans who called the suicide hotline.  In plaintiff's view, her conduct  stemmed from her hearing impairment rather than a disdainful or insensitive attitude.  *See* Dkt. #7-1 at ¶¶42, 45, 48 ("[i]f the[ supervisors who complained that plaintiff was "disdainful, dismissive and insensitive" toward callers] had [physically observed plaintiff's work], they would have seen that Amie had difficulty hearing others speak over the phone").

Such allegations, though, are insufficient to plausibly state that the V.A. regarded plaintiff as disabled with regard to any major life activity.  *See e.g.*,  *Murphy v. United Parcel Service, Inc.*, 527 U.S. 534 (1999) ("to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job"); *Laurent v. G & G Bus Serv.*, 2011 U.S. Dist. LEXIS 77138 at *21-*22 (S.D.N.Y. 2011) (report and recommendation finding that plaintiff who alleges facts suggesting only that his employer believed he was unfit for a single position by virtue of an alleged disability has failed to state a claim for disability-related discrimination).

While plaintiff's allegations, taken as true, establish that she may have had difficulty performing her position as a telephone hotline responder, they are insufficient to state a claim that

plaintiff was regarded as disabled by her employer.  Therefore, plaintiff has failed to state a claim for discriminatory discharge, and that claim is dismissed.

### B.    Disparate Treatment

Plaintiff also alleges that she was subjected to disparate treatment on the basis of disability, on the grounds that the V.A. failed to accommodate her requests to transfer to an evening shift because she lacked the requisite seniority, even while permitting two other non-senior, non-disabled employees to do so.  (Dkt. #7-1 at ¶¶32-37).

To state a plausible claim for disparate treatment, plaintiff must allege facts in support of the following elements: 1) she belonged to a protected class; 2) she was qualified for the position she held; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).

First, as with her discriminatory discharge claim, plaintiff does not allege that she was qualified for the position that she held, and that she could perform it, with or without reasonable accommodations.

Plaintiff has also failed to plausibly allege that the denial of a transfer to an evening shift constituted an adverse employment action, in light of her corresponding admission that she was *already* assigned to work "evenings and weekends." *Id*. at ¶44.  Indeed, plaintiff deliberately asserted this fact in both her original and amended complaints, even after the potential discrepancy was raised by the V.A. in its motion to dismiss the initial complaint.  (Dkt. #3).  Because plaintiff maintains that the V.A. *did* assign her to work evenings in the first instance, her claim that the V.A. subjected her to disparate treatment by *denying* her that opportunity is simply not plausible.

Plaintiff's disparate treatment claim is dismissed.

### C.    Hostile Work Environment

Plaintiff claims that the V.A. subjected her to a hostile work environment on the basis of her disability.  In order to state a hostile work environment claim, a plaintiff must plead facts which tend

to show that the complained-of conduct: (1) is objectively severe or pervasive, such that it creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates an environment that is discriminatory, hostile or abusive to the plaintiff because of the plaintiff's membership in a protected class.  *See generally Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).

Whether a work environment is hostile is assessed based on the totality of the circumstances. "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Patane*, 508 F.3d 106 at 113.  However, federal anti-discrimination statutes are not intended to create a generalized civility code for the workplace: thus, "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004).

With respect to the requirement that plaintiff plausibly allege that the complained-of conduct occurred because of her actual or perceived disability, it is important to note that, "[e]veryone can be characterized by . . . (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."  *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002).

Plaintiff alleges that her workplace was hostile, because the V.A. refused to allow her to observe groups in the Pain Clinic while volunteering there, and because a supervisor "held back" plaintiff "from reaching a higher potential" by ignoring or denying her request to convert her volunteer position with the V.A.'s Pain Clinic (a post plaintiff voluntarily sought, requested and obtained in addition to her regular employment as a hotline responder) into a doctoral level internship.  Specifically, plaintiff alleges that the supervisor admonished her to "back off" from her

inquiries about a doctoral level internship, because she appeared "to [sic] pushy." (Dkt. #7-1 at ¶¶26-30).

The Court is mindful that, "to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse," and that the Second Circuit has, "repeatedly cautioned against setting the bar too high" in analyzing hostile work environment claims. *Patane*, 508 F.3d 106 at 113 (internal quotations omitted).

However liberally construed, plaintiff's complaint falls woefully short of alleging the kind of conduct that a reasonable person could find to create an abusive work environment. The V.A.'s alleged actions consist solely of enforcing internal policies concerning volunteers and interns, calling plaintiff "pushy," and failing to grant plaintiff's request to create and occupy a doctoral internship in the Pain Clinic. These actions, none of which related to plaintiff's primary employment with the V.A. as a hotline responder, do not remotely reach the level of "'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Id*.

Furthermore, plaintiff's factual allegations do not support the inference that her work environment was hostile or abusive because of her perceived disability. "[I]t is axiomatic that mistreatment at work . . . is actionable under [federal anti-discrimination statutes] only when it occurs because of an employee's . . . protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Plaintiff alleges no facts which support her claim that the V.A.'s "hostile" conduct, including enforcement of policies concerning the observation of groups by volunteers or interns, and/or the V.A.'s alleged hostility to plaintiff's attempt to secure a doctoral internship in the Pain Clinic, were in any way related to a perception that plaintiff was limited in her ability to perform a major life activity. Accordingly, plaintiff's hostile work environment claim must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, I grant Amie's cross motion to amend her complaint (Dkt. #7), but conclude that Amie has failed to state a claim upon which relief can be granted pursuant to the Rehabilitation Act.   Accordingly, the defendant's motion to dismiss the complaint (Dkt. #3) is granted, and the complaint is dismissed in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 1, 2011.

- 9 -